Dargan, Ch.
delivered the opinion of the Court.
On this appeal, two questions have been discussed. It has been argued in the first place, that the legacy to Patrick Collier did not lapse in consequence of his death before the testator, because the limitation over to Patrick Collier’s blood relations, in the event of his dying without issue, is not too remote and uncertain, nor after an indefinite failure of issue; and that on the death of the testator, the limitation over to his blood relations took effect in favor of the persons who could bring themselves within that description. This is the appellants’s first proposition.
If there be a legacy to one, for life, with remainder to another, which remainder, on the death of the testator, would be direct and vested, and not contingent, and the person intended to be *129 the tenant for life dies in the lifetime of the testator, I think it cannot be doubted that, in such case, the legacy does not lapse, but on the death of the testator, goes at once to him who, in the scheme of the legacy, was intended to be only a remainderman. And it may be .true, that a limitation over in favor of “ blood relations,” as a class, might be valid and effectual, provided it was conformable with all the rules which the law has prescribed against the creation of perpetuities. But, conceding that the limitation over (in this case) in favor of the first taker’s blood relations, was not too remote in consequence of its being after an indefinite failure of issue, it would have been, (if the first taker had survived the testator,) a contingent limitation, and not a vested remainder. It would have been contingent upon the event of the first taker’s dying without issue living at the time of his death. And if this condition had not happened, the first taker would have had an absolute estate, and the limitation would have been gone forever. And I am not prepared to admit that, where a legacy is given to one, with a valid but contingent limitation over, and the legatee dies in the lifetime of the testator, the legacy does not lapse. It is unnecessary for me further to develope these views, or to sustain them by authority or illustration, as they are not immediately involved in the question which the Court deems it incumbent upon it to decide. For, as to the question of the limitation, the Court is of the opinion, that the limitation (if one was intended) is after the indefinite failure of issue, and, therefore, void for being too remote. Indeed, it seems to me that this construction is too clear for discussion.
The second proposition submitted to the Court on this appeal is this — that the benefit intended by the testator to Patrick Collier’s blood relations, was not to be enjoyed by them m succession to Patrick Collier, or after the efflux of any estate to him or his issue ; but was a direct estate to them, as a substitu-tional or alternative legacy, given to them as a class, in the event of the death of Patrick Collier without issue in the lifetime of the testator. The corollary of this proposition, namely — that *130 the legacy has not lapsed, is perfectly legitimate, if the principal proposition has been sustained.
It is perfectly clear that this position is entirely inconsistent with the first ground assumed, that there was a valid limitation. Both cannot he true. This, however, is no satisfactory solution of either question.
If a testator gives a legacy to one, either absolutely or with limitations, and declares that if the first named legatee should die in his lifetime, the same legacy should go to another person, or to a clearly designated, class of persons, capable of being identified; and the first of the alternative legatees should die in the lifetime of the testator, undoubtedly this is a case in which there would be no lapse. The legacy to the second alternative legatee would take effect as a substantive legacy; directly, and not in succession to the first named or preferred legatee. And if such were the intention of the testator, clearly to be inferred from the whole will by a fair construction, though not expressed in formal language to that effect, such intention would be respected, and efficacy given to it by the decree of the Court. In the foregoing remarks, I have admitted in the broadest terms, the legal principles upon whioh the second ground discussed on this appeal is based.
But the Court perceives nothing in the will of Edward Collier, to which these unquestionable legal principles will apply. According to the construction which the Court has given to the will, there is no intention on the part of the testator, indicated either directly or by implication, to appoint the class of persons called the blood relations of Patrick Collier, as a substitute for him, in the event that he should die in the lifetime of the testator. The clause in question is as follows. “ I give and bequeath to Patrick Henry Collier, son of the said Sarah Collier, and in the event of his dying without issue, to go to his blood relations, the following negroes,” namely, &c. The Court perceives in this, nothing but a common and fruitless attempt to create a limitation in favor of the blood relations, which is ineffectual from an ignorance or misapprehension of those well *131 defined legal boundaries, by which that species of estate or interest in property is restricted. . Suppose the clause had read thus: — “ I. give and bequeath to Patrick Collier, the following negroes, namely,” &c. “ and in the event of his dying without issue, the said negroes to go to his blood relations.” On the construction of such a clause, could there be a doubt? The transposition of the words in which the blood relations are mentioned, from the parenthetical form, does not vary the plain sense and meaning of the clause.
To adopt the construction contended for by the appellants, the copulative conjunction which stands in the way, must be removed. The Court would have no difficulty in changing the copulative into the disjunctive form of expression, and e conver-so, where it is necessary to effectuate the intention of the testator. But to authorize the Court to take ' such liberties with a will, the intention must be manifest. It is done in the construction of wills, to prevent the clear intention of the testator from being defeated. It will not be done to carry into effect a conjectural intention, however plausible such construction may be.
It is to be remarked in this case, that the testator gives nothing to the issue of Patrick. There is no limitation to them, contingent or otherwise. If Patrick had died in the lifetime of the testator leaving issue, by the terms of this will such issue could not take. The word issue here, is a word of limitation, and not of purchase. There is nothing given to Patrick’s issue as such, and if there were, there is nothing to limit the generality of that form of expression. If Patrick had died in the lifetime of the testator, leaving issue, there being nothing given to them as purchasers, the legacy would have lapsed; for, according to the appellant’s own construction, the blood relations were not to take, unless Patrick should die in the testator’s lifetime without issue. The testator, therefore, could not have intended the blood relations as the substitutes or alternates of Patrick; for, by legal construction, he must be considered as having intended a lapse, in the event of Patrick’s dying, leaving issue, in his lifetime.
*132 If the words of the bequest had been these: — “ I give and bequeath to Patrick, and in the event of his death to go to his blood relations,” &c. omitting the mention and condition of Patrick’s dying without issue, there would have been strong reasons and high authority for the construction that would give the property to the blood relations as the alternates or substitutes of Patrick. But the unfriendly interposition of the words relating to Patrick’s issue spoils this construction, and renders inapplicable the authorities cited. The strongest of them in support of the appellants’ construction, Galland vs. Leonard, (1 Swans. 161) is an anomalous case, and appears to have been decided with reference to its peculiar circumstances. An interpretation was given to the will to reconcile direct and palpable inconsistencies, and to harmonize its conflicting provisions. In these provisions there was' much complexity, and the testator’s meaning was carefully gleaned from the whole. The case is not considered as furnishing a parallel to this.
It is ordered and decreed that the appeal be dismissed, and the circuit decree be affirmed.
Johnston, Dunkin and WaRdlaw, CC. concurred.
Appeal dismissed.